1

2

3

4

5

6

7

8                      **IN THE UNITED STATES DISTRICT COURT**

9                     **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JAIME S. DAWSON,                          No.  2:24-CV-2407-DAD-DMC

12                 Plaintiff,

13         v.                                   FINDINGS AND RECOMMENDATIONS

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                   Defendant.
16

17

18         Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20   Pending before the Court are the parties' briefs on the merits, ECF Nos. 13, 15, and 16.[1]

21         The Court reviews the Commissioner's final decision to determine whether it is:

22   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

23   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

24   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

25   (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

26   a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

27

28         ---

          [1]      Defendant's filing at ECF No. 16 is a duplicate of the opposition brief filed at ECF
     No. 15.  Both appear on the Court's docket as separate pending motions.

                                               1

1  including both the evidence that supports and detracts from the Commissioner's conclusion, must

2  be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's

4  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12  Cir. 1988).

13          For the reasons discussed below, the Court recommends the Commissioner's final

14  decision be affirmed.

15

16  **I.  THE DISABILITY EVALUATION PROCESS**

17          To achieve uniformity of decisions, the Commissioner employs a five-step

18  sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

19  §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

20
21  Step 1      Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

22
23  Step 2      If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

24

25  Step 3      If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

26

27

28  / / /

| | Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
|---|---|---|

Step 5      If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on October 7, 2021.  See CAR 17.[2]  In the application, plaintiff claims disability began on April 26, 2021.  See id.  Plaintiff's claim was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative hearing, which was held on [date], before Administrative Law Judge (ALJ) Vincent Misenti.  In a November 24, 2023, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

> 1.  The claimant has the following severe impairment(s): degenerative disc disease of the lumbar spine and right hip osteoarthritis.
>
> 2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.
>
> 3.  The claimant has the following residual functional capacity:  the claimant can perform light work except: that she can climb ramps and stairs only occasionally; she can never climb ladders, ropes, or scaffolds; she can stoop, kneel, crouch, and crawl occasionally; she can never work at unprotected heights; and she must avoid concentrated exposure to moving mechanical parts.
>
> 4.  Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform her past relevant work.

See id. at 19-29.

After the Appeals Council declined review on July 3, 2024, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2]     Citations are the to the Certified Administrative Record (CAR) lodged on October 31, 2024, ECF No. 10.

1

### III. DISCUSSION

2    In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in concluding that

3    Plaintiff's mental impairments are not severe because the ALJ improperly evaluated lay witness

4    evidence from Plaintiff's fiancé; (2) at Step 4 the ALJ improperly evaluated medical opinions

5    from agency examining psychologist G.E. Washington, Psy.D.; and (3) the ALJ further erred at

6    Step 4 because the ALJ improperly rejected Plaintiff's subjective statements and testimony.  See

7    ECF No. 13-1.

8    **A.    Severity of Plaintiff's Mental Impairments**

9    To qualify for benefits, the plaintiff must have an impairment severe enough to

10   significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§

11   404.1520(c), 416.920(c).[3]   In determining whether a claimant's alleged impairment is

12   sufficiently severe to limit the ability to work, the Commissioner must consider the combined

13   effect of all impairments on the ability to function, without regard to whether each impairment

14   alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996);

15   see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or

16   combination of impairments, can only be found to be non-severe if the evidence establishes a

17   slight abnormality that has no more than a minimal effect on an individual's ability to work.  See

18   Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.

19   1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the

20   impairment by providing medical evidence consisting of signs, symptoms, and laboratory

21   findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone

22   is insufficient.  See id.

23   / / /

24   / / /

25   / / /

26   _____

      [3]    Basic work activities include: (1) walking, standing, sitting, lifting, pushing,

27   pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
      carrying out, and remembering simple instructions; (4) use of judgment; (5) responding

28   appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
      in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

At Step 2, the ALJ in this case determined that Plaintiff's medically determinable mental impairments of anxiety and panic disorder cause no more than minimal limitations in Plaintiff's ability to perform basic work activities.  See CAR 20.  The ALJ stated:

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> In so finding, the undersigned is persuaded by the prior administrative findings at the initial and reconsideration levels, that the claimant had no more than mild limitations in any of the domains below (Exhibit 3A/12). These prior administrative findings are supported by explanation and consistent with the record (*Id., see* record). However, the undersigned is not persuaded by the prior administrative finding at the initial level that the claimant had moderate limitations in her ability to interact with others, because evidence received at the hearing level does not support such limitations (Exhibit 1A/10).
>
> The first functional area is understanding, remembering, or applying information. In this area, the claimant has no more than mild limitation. The claimant's fiancé indicated that the claimant did not have limitations in understanding, remembering, or following instructions (Exhibits 5E/6 and 9E/9). In February 2022, the claimant's memory was intact, and she was able to recall three out of three words after five minutes (Exhibit 8F/4). Treatment records indicate that she had intact recent and remote memory (Exhibit 11F/25, 49; 13F/12, 18, 26; 14F/66, 136; 16F/190). Further, her intellectual functioning was estimated to be in the above average range (*Id.*) At the initial and reconsideration levels, the claimant was deemed to have no more than mild limitation in this domain (Exhibits 1A, 3A).
>
> The next functional area is interacting with others. In this area, the claimant has no more than mild limitation. The claimant's fiancé indicated that the claimant's impairments did not affect her abilities to get along with others and indicated that she got along well with authority figures (Exhibits 5E/6-7; 9E/9-10). The claimant's grooming and hygiene were noted to be appropriate (Exhibit 8F/4; 11F/48; 13F/17). Further, she was deemed to be pleasant, cooperative, and responsive (Exhibit 8F/2, 4; 11F/25, 48; 13F/18, 26, 31; 14 F/19; 16F/152, 169, 190, 254) At the reconsideration level, the claimant was deemed to have no more than mild limitation in this domain (Exhibit 3A).
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has no more than mild limitation. The claimant's fiancé indicated that the claimant's physical impairments affected her ability to concentrate but that she finished what she started (Exhibit 5E/6). During a psychological examination, it was determined that the claimant's attention and concentration were fair she could recall six digits forward and three digits backwards (Exhibit 8F/4). The claimant endorsed decreased concentration in 2022, but providers repeatedly deemed her concentration and attention to be within normal limits (Exhibit 11F/24-

25, 48; 13F/18, 26; 16F/190). At the initial and reconsideration levels, the claimant was deemed to have no more than mild limitation in this domain (Exhibits 1A, 3A).

The fourth functional area is adapting or managing oneself. In this area, the claimant has no more than mild limitation. The claimant's fiancé indicated that the claimant was able to perform household chores, make meals, drive a car, shop by phone and computer, manage money, read and draw for pleasure, socialize daily, and follow written and spoken instructions well (Exhibit 5E). He indicated that her limitations were associated with her physical pain, rather than any mental health issue (*Id.*). Examiners and providers have noted that the claimant had intact or "good" insight, judgment, and impulse control (Exhibits 8F/4; 11F/25; 13F/26; 16F/190). At the initial and reconsideration levels, the claimant was deemed to have no more than mild limitation in this domain (Exhibits 1A, 3A).

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is non-severe (20 CFR 404.1520a(d)(1)).

CAR 20-21.

In her opening brief, Plaintiff summarizes medical records from Dr. Washington, Dr. Sen, Dr. Sagun, and LCSW Carrie Smith.  See ECF No. 13-1, pgs. 9-10.  According to Plaintiff: "The above medical evidence supports that Dawson does have a panic/anxiety disorder and a depressive disorder and that these impairments do cause at least 'moderate' deficits in her ability to interact with others, manage stress in a work setting, and complete a normal workday without interruptions from her symptoms."  Id. at 10.  After accurately summarizing the ALJ's determinations regarding the severity of Plaintiff's mental impairments, Plaintiff argues:

> The ALJ blatantly parsed and conflated the Third-Party Function Report of Dawson's fiancé, falsely suggesting they asserted Plaintiff had no emotional challenges. [footnote omitted].
> Later in the decision, the ALJ discussed Dr. Washington's opinion (CAR-27), finding the opinion unpersuasive based on purportedly inconsistency "with the record and the claimant's and her fiancé's statements." (Tr. 27.) The ALJ fails to remotely approach offering an elaboration.

ECF No. 13-1, pg. 11.

///

///

7

1           Plaintiff raises two arguments. First, Plaintiff contends that the ALJ

2    misinterpreted lay witness evidence provided by Plaintiff's fiancé. Second, Plaintiff argues that

3    the ALJ erred with respect to evaluation of Dr. Washington's opinions. At the outset, the Court

4    observes that Plaintiff's second argument is more properly directed to the ALJ's evaluation of Dr.

5    Washington's opinions "later in the decision" at Step 4. At Step 2, the ALJ did not reference Dr.

6    Washington's opinions. Instead, the ALJ cited Dr. Washington's objective examination findings,

7    as well as objective findings from other sources, in concluding that Plaintiff's mental impairments

8    are not severe. Plaintiff's arguments as to the ALJ's evaluation of Dr. Washington's opinions are

9    discussed later in this opinion.

10          Turning to Plaintiff's argument concerning the ALJ's evaluation of lay witness

11    evidence from Plaintiff's fiancé, the new regulatory framework, which applies to claims filed, as

12    here, after March 27, 2017, identifies five categories of evidence: (1) objective evidence; (2)

13    medical opinions; (3) "other" medical evidence; (4) evidence from nonmedical sources; and (5)

14    prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With respect to evidence

15    from nonmedical sources—the category under which lay testimony falls—the revised regulations

16    expressly provide that the agency is "not required to articulate how we considered evidence from

17    nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this

18    section." 20 C.F.R. § 416.920c(d). Thus, the revised regulations distinguish between evidence the

19    ALJ is required to "consider" and evidence that requires the ALJ to "articulate" how the evidence

20    was considered. Based on a plain reading of the revised regulations, the new regulatory

21    framework requires an ALJ to *consider* lay testimony but does not necessarily require the ALJ to

22    articulate *how* it was considered.

23          At Step 2, the ALJ addressed evidence from Plaintiff's fiancé, Michael Aragon.

24    See CAR 21. Specifically, the ALJ noted the following: (1) "The claimant's fiancé indicated that

25    the claimant did not have limitations in understanding, remembering, or following instructions,"

26    id.; (2) "The claimant's fiancé indicated that she [Plaintiff] got along well with authority figures,"

27    id.; (3) "The claimant's fiancé indicated that the claimant's physical impairments affected her

28    ability to concentrate but that she finished what she started," id.; and (4) "The claimant's fiancé

indicated that the claimant was able to perform household chores, make meals, drive a car, shop by phone and computer, manage money, read and draw for pleasure, socialize daily, and follow written and spoken instructions well," id.  Plaintiff argues: "Dawson submits that the ALJ's recitations of a list of Dawson's hobbies or the activities she can perform on her days of better functioning does not amount to a specific, germane *reason* for discounting the witness's testimony regarding Dawson's limitations."  ECF No. 13-1, pg. 19 (italics in original).

Plaintiff's argument that the ALJ failed to provide reasons germane to the witness for discounting Plaintiff's fiancé's testimony is not persuasive.  Plaintiff's argument refers to the standard for evaluation of lay witness evidence which controlled prior to the promulgation of revised regulations applicable to cases, as here, filed after March 2017.  As explained above, under the new regulations, the ALJ is only required to consider lay witness evidence.  The ALJ is not required to detail how such evidence is considered.  Here, it is clear from the ALJ's decision that evidence provided by Plaintiff's fiancé was in fact considered.

The question before the Court is whether the ALJ mischaracterized the lay witness evidence such that the ALJ's hearing decision cannot be said to have been based on substantial evidence.  Mr. Aragon's statements are contained in the record at Exhibits 5E and 9E.  See CAR 276-83 (Exhibit 5E) and 309-16 (Exhibit 9E).  Exhibit 5E is Mr. Aragon's statement from December 10, 2021.  See id. at 276-83.  Exhibit 9E is Mr. Aragon's statement from April 21, 2022.  See id. at 309-16.  Citing these exhibits, the ALJ characterized Mr. Aragon's testimony as indicating that: Plaintiff has no limitations in understanding, remembering, or following instructions; Plaintiff gets along well with authority figures; Plaintiff finishes what she starts; Plaintiff is able to perform household chores and many other activities of daily living; and Plaintiff can follow written and spoken instructions well.  See CAR 21 (citing Exhibits 5E and 9E).

In Mr. Aragon's December 2021 statement at Exhibit 5E, Mr. Aragon stated that Plaintiff has a difficult time doing normal household activities due to chronic pain.  See CAR 276.  Mr. Aragon also stated that Plaintiff feeds the dog, vacuums, and does laundry, but only "when back permits."  Id. at 278.  Mr. Aragon stated that Plaintiff can drive a car.  See id. at 279.

9

1  Mr. Aragon also stated that Plaintiff can shop for food and household items, but only over the

2  phone or computer.  See id.  Mr. Aragon stated that Plaintiff is a "professional" at reading,

3  watching television, drawing, and coloring by numbers.  Id. at 280.  Mr. Aragon stated that

4  Plaintiff socialized daily in person, over the phone, by email, text, mail, and video chat.  See id.

5  Mr. Aragon stated that Plaintiff is "fantastic" at getting along with authority figures.  Id. at 282.

6        In Mr. Aragon's April 2022 statement at Exhibit 9E, Mr. Aragon stated that there

7  are days when Plaintiff cannot get out of bed and other days when she will watch television, read,

8  or draw.  See CAR 310.  Mr. Aragon stated that Plaintiff keeps busy with watching television and

9  drawing.  See id. at 313.  Mr. Aragon stated that Plaintiff visits with family via text, phone calls,

10  and in person, though she does not spend as much time in person as she used to.  See id. at 313-

11  14.  Mr. Aragon stated that Plaintiff has a difficult time with any physical activities.  See id. at

12  314.  Mr. Aragon stated that Plaintiff is able to follow instructions "ok."  Id.  As to Plaintiff's

13  ability to get along with authority figures, Mr. Aragon stated that "[s]he has no issues" and

14  handles stress well  Id. at 315.

15        Comparing these exhibits with the ALJ's summary of Mr. Aragon's statements,

16  the Court finds that the ALJ has not mischaracterized the evidence with respect to Mr. Aragon's

17  statements concerning Plaintiff's mental limitations.  As the ALJ summarized, Mr. Aragon stated

18  that Plaintiff has no trouble dealing with authority figures, she finishes what she starts in terms of

19  her artwork, she is able to perform at least some household chores, and Plaintiff can follow

20  instructions.  Notably, Mr. Aragon's statements focus on Plaintiff's physical limitations and

21  reflect that Plaintiff's mental abilities remain largely intact.

22      **B.**    **Medical Opinions Provided by Dr. Washington**

23        "The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue,

24  533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not

25  explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

26  2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

27  opinion over another.  See id.

28  / / /

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions

/ / /

11

1  from other sources.  See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr.

2  30, 2021).

3          Under the revised regulations, the ALJ must evaluate opinions and prior

4  administrative medical findings by considering their "persuasiveness."  See Buethe v. Comm'r of

5  Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)).

6  In determining how persuasive the opinion of a medical source is, an ALJ must consider the

7  following factors:  supportability, consistency, treatment relationship, specialization, and "other

8  factors."  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)).  Despite a

9  requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies.

10  See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

11          Specifically, in all cases the ALJ must at least "explain how [she] considered the

12  supportability and consistency factors," as they are "the most important factors."  See Buethe,

13  2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)).  For supportability, the regulations state:

14  "[t]he more relevant the objective medical evidence and supporting explanations presented by a

15  medical source are to support his or her medical opinion(s) or prior administrative medical

16  finding(s), the more persuasive [the opinion] will be."  See Buethe, 2021 WL 1966202, at *4

17  (quoting § 404.1520c(c)(1)).  "For consistency, the regulations state: '[t]he more consistent a

18  medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

19  medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'"

20  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate

21  findings on the remaining factors (relationship with claimant, specialization, and 'other') only

22  when 'two or more medical opinions or prior administrative medical findings about the same

23  issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the

24  record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

25          In this case, the ALJ addressed Dr. Washington's opinions at Step 2 and Step 4 of

26  the sequential analysis.  See CAR 27.  At Step 2, the ALJ cited Dr. Washington's objective

27  examination findings at Exhibit 8F to support the ALJ's conclusion that Plaintiff has no more

28  than mild limitations in the four areas of mental functioning.  See id. at 20-21.  In determining

1    Plaintiff's residual functional capacity at Step 4, the ALJ addressed Dr. Washington's opinions as

2    follows:

3                    . . .The undersigned is not persuaded by the findings of the consultative
                 psychological examiner [Dr. Washington], who saw the claimant once in
4                February 2022, and determined that she had more than mild limitations in
                 her abilities to complete a normal workday or work week without
5                interruption from a psychiatric condition; interact with coworkers and the
                 public; or deal with the usual stresses encountered in competitive work
6                because these findings are inconsistent with the record and the claimant's
                 and her fiancé's statements (Exhibit 8F, *compare* exhibits 4E, 5E). As
7                detailed in finding three [regarding the severity of impairments at Step 2],
                 the undersigned has determined that the claimant has no more than mild
8                limitation in any of her work-related domains. The reasons for finding
                 such are incorporated herein.

9        CAR 27.

10

11           Plaintiff asserts two arguments related to the ALJ's evaluation of Dr.

12   Washington's opinions at Step 4.  First, Plaintiff contends that the ALJ placed "undue reliance"

13   on the results of mental status examinations.  See ECF No. 13-1, pgs. 11-13.  Second, Plaintiff

14   argues that the ALJ failed to comply with the 2017 revised regulations.  See id. at 13-14.

15           Citing Ghanim v. Colvin, 763 F.3d 1154 (9th Cir. 2014), Plaintiff first argues that

16   the ALJ placed excessive emphasis on the results of Plaintiff's mental status examinations.  See

17   ECF No. 13-1. Pg. 11.  According to Plaintiff, mental status examinations are diagnostic tools and

18   represent only a snapshot of how Plaintiff was functioning at the time of the examination.  See id.

19   Plaintiff also argues that depression and anxiety can manifest with "subclinical" symptoms even

20   where a mental status examination is "normal."  Id. at 11-12.  Plaintiff states:

21               A claimant with major depressive disorder can appear to have
             normal cognitive abilities in a mental status examinations during those
22           brief assessments but *still cannot perform work on a regular, sustained
             basis* because of the significant functional impacts of their depression.
23           One cannot extrapolate in 15 minutes whether one can work an entire
             workday. The examiner is seeing a small snapshot in safe, one-on-one
24           environment. This is not as same as having their performance judged in
             the workplace. It is simply not the same thing. Rather, the question is how
25           do the impairments affect the ability to sustain work activity in a work-
             setting?

26

27       ECF No. 13-1, pg. 12.

28   / / /

13

1    Ghanim is distinguishable because, in that case, the Ninth Circuit reviewed an

2    ALJ's evaluation of the claimant's subjective statements and testimony and concluded that the

3    treatment records as a whole did not undermine the claimant's statements and testimony.  See 726

4    F.3d at 1164.  Additionally, the Ninth Circuit in Ghanim concluded that the ALJ had erred in

5    relying on results of mental status examinations relating to cognitive impairments to discount the

6    claimant's testimony because the claimant testified as to nightmares, insomnia, social anxiety,

7    and depression – not cognitive impairment.  See id.  Plaintiff's argument in this case relates to the

8    ALJ's evaluation of Dr. Washington's opinions, not evaluation of Plaintiff's subjective statements

9    and testimony, which is discussed below.[4]

10    Plaintiff's first argument that the ALJ placed undue emphasis on objective

11    examination findings is at odds with Plaintiff's second argument that the ALJ failed to apply the

12    revised regulations which require that medical opinions be evaluated in the context of the

13    objective evidence of record, including mental status examination findings.  As to application of

14    the revised 2017 regulations, the Court finds no error.  Essentially, the ALJ was presented with

15    conflicting medical opinions – those offered by Dr. Washington that Plaintiff has some moderate

16    mental impairments and those offered by the state agency consulting doctors who opined that

17    Plaintiff has no more than mild mental impairments.  The ALJ weighed the competing opinions

18    and properly found that Dr. Washington's opinions were not consistent with the objective

19    findings and that the agency consulting doctors' opinions were consistent with the objective

20    evidence as well as statements from Plaintiff's fiancé, discussed above, reflecting that Plaintiff

21    has no more than mild mental limitations.  Here, this Court finds no error because the ALJ's

22    decision to discount Dr. Washington's opinions are supported by substantial evidence in the

23    record, specifically, the agency doctors' contrary opinions and statements from Plaintiff's fiancé.

24    See Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022) (under the revised regulations, an ALJ's

25    / / /

26

27    _____

    [4]    The Court notes that, in the context of the ALJ's evaluation of Plaintiff's
28    subjective statements and testimony, Plaintiff does not argue that the ALJ place undue reliance on
    mental status examination results.

1  decision to discredit any medical opinion need only be supported by substantial evidence); see

2  also 20 C.F.R. § 404.1520c.

3      **C.**      **Plaintiff's Subjective Statements and Testimony**

4          The Commissioner determines the weight to be given to a claimant's own

5  statements and testimony, and the court defers to the Commissioner's discretion if the

6  Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94

7  F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.

8  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.

9  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify

10  what testimony is not afforded weight and what evidence undermines the testimony.  See id.

11  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's

12  reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also

13  Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue,

14  504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

15          If there is objective medical evidence of an underlying impairment, the

16  Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

17  because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

18  341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

19  
20  
21  
22  
> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

23  
24  
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

25          The Commissioner may, however, consider the nature of the symptoms alleged,

26  including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

27  947 F.2d at 345-47.  In weighing a claimant's statements and testimony, the Commissioner may

28  also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other

1   inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to

2   follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and

3   (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See

4   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

5   claimant cooperated during physical examinations or provided conflicting statements concerning

6   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

7   claimant testifies as to symptoms greater than would normally be produced by a given

8   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

9   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

10            At Step 4, the ALJ addressed Plaintiff's subjective statements and testimony.  See

11   CAR 22-27.  The ALJ summarized Plaintiff's subjective statement and testimony as follows:

> The claimant described her symptoms in written submissions, to medical professionals, and at the hearing. She alleged an onset date of April 26, 2021. Prior to the hearing, she alleged an inability to work due to mental and physical impairments (Exhibit 2E). As noted in finding three, not all of these alleged impairments rise to the level of a severe impairment for purposes of this determination.
>
> In a December 8, 2021, adult function report, the claimant indicated that her impairments limited her abilities to sit and stand for more than an hour to time, causing pain that affected her ability to concentrate, and required medications that affected her ability to drive and work without the risk of injury (Exhibit 2E/1). However, she admitted that in a "typical day" she performed household chores, noting that she had two sons and a fiancé for whom she cooked, cleaned, and washed laundry (Id./2). She indicated that while she was able to feed her dog, her fiancé walked her due to the claimant's limitations (Id.) She affirmed that she had no problem with personal care in terms of dressing, bathing, caring for her hair, shaving, feeding, and toileting (Id.) She affirmed being able to use a smart phone, set reminders, prepare meals, and vacuum, but denied being able to perform yardwork or use a lawnmower due to pain (Id./3). She indicated that she only shopped by telephone for delivery, but was able to manage money, watch movies, socialize in person and via text, and make crafts (Id./4-5). She indicated that she could lift 20 pounds, walk for a mile, and finish what she started most of the time (Id./6). She indicated having limitations in lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing (Id.) She indicated that her conditions did not affect her abilities to reach, remember, complete tasks, concentrate, understand, follow instructions, use her hands, or get along with others (Id.) She indicated that she used a back brace occasionally when in significant pain or when she was feeling particularly weak (Id./7). Lastly, she indicated that she was scheduled for surgery on December 15, 2021, and may need a hip replacement "in the near future" (Id./8). The claimant

did not indicate that the activities herein reflected a "good" day, but a typical day (*Id.*/2).

In a subsequent undated function report that was uploaded on December 5, 2022, the claimant indicated that on "bad days," she was unable to get out of bed and that this occurred multiple days per month (Exhibit 6E). She further undermined her prior statements regarding her abilities, indicating that she had problems with personal care and did not prepare any meals, but indicated that she could drive and shop in stores, which she previously denied (*Id., compare* Exhibit 2E). In the brief submitted in connection with this matter, the claimant added that "She has met her burden at step four; she cannot perform the exertional demands of his [sic] previous work" (Exhibit 14E/1).

\* \* \*

At the hearing, the claimant testified that she lived in a home with her fiancé and son, drove an average of three times per week, and that since her last sacroiliac surgery in December 2021, she continued to have "constant, all day" pain and burning sensations alleviated somewhat by heat or ice, had reduced range of motion in bending, and required pain medications daily, which reduced her pain to a "6" out of 10 (*Id.*). She indicated that she was not receiving any care beyond pain management and that doctors had not explained why she continued to have these symptoms (*Id.*). She indicated that no doctor had told her that her weight was a contributing factor (*Id.*).

As to her right hip osteoarthritis, she described a "sharp, dull, burning pain" into her right hip and groin, radiating down the side of her leg for which her only treatment was pain management, including injections, which were not helpful and that medications reduced her pain to a 6.

She reported that since having her SI fusion she could only sit for approximately 30 minutes before needing to change positions for 10 minutes or longer. She indicated that she could stand approximately one-half hour before needing to sit or lie down for 10 to 15 minutes. She indicated that she could walk two blocks and lift 10 pounds. She testified that she was able to maintain her own personal appearance in terms of bathing, dressing, grooming and toileting (Id.).

She described a typical day as waking early due to insomnia, drinking coffee and having breakfast with her pain medication, watching television and lying on a heating pad, dozing off throughout the day, doing light housework if she feels up to it, eating something for lunch that is easy to prepare, spending time with her fiancé when he arrived home at 3 o'clock, preparing dinner together, doing the dishes, watching television, and going to sleep at 10:00 (Testimony). She indicated that since the last surgery, she was unable to do any laundry or vacuuming (*Id.*). She enjoys reading, doing crafts, manipulating photography images (*Id.*). She described a multistep process that she engages in to create printed images on wood, that she gives as gifts (*Id.*).

/ / /

/ / /

17

She reported that she and her partner will occasionally go out to eat, go to the movies (the kind with reclining chairs) but did little else outside the home. She affirmed using a computer at home throughout the day to pay a bill, send an email, check social media, or check in with family. He indicated that pain management was helpful because without the medication, the pain would be greater.

She indicated that she was not sure she could maintain a full-time work schedule due to her need for pain medication affecting her ability to drive as part of her prior work duties. She only drove locally in town. She alleged the last surgery increased her pain.

The claimant did not allege having any mental impairments that would limit her ability to work until her attorney raised the issue (Hearing recording). She stated she "always struggled with anxiety," had panic attacks, and had increased depression (*Id.*). She sees a psychiatrist four times each year and stated that medication was helpful. She admitted that surgery was not recommended for her right hip due to her age (*Id.*).

CAR 23-24.

Following this summary, the ALJ stated: "The medical evidence of record does not support the claimant's assertions of dysfunction." Id. at 24. This finding is followed by a lengthy summary of the longitudinal medical record, which is not repeated here. See id. at 24-26. The ALJ then concluded:

As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are somewhat inconsistent because although the claimant alleged that pain medications only reduced her pain to a 6/10, she has also reported that her pain was reduced to a 4, and further indicated that she had stopped taking Norco in September 2022 while rating her pain as a 4/10 (Exhibit 9F/10, 16F/34). Further, although she described a "sharp, dull, burning pain" into her right hip and groin, radiating down the side of her leg, imaging of her right hip has revealed only mild findings, as detailed above. Indeed, although referred for a nerve conduction or electromyogram study, the claimant declined (Exhibit 6F/123). Moreover, the claimant has reported weakness in the right lower extremity, but strength testing has repeatedly revealed full strength in the bilateral lower extremities (Exhibits 6F/24, 30, 126; 9F/8, 13; 13F/12; 14F/66, 16F/253). Additionally, although she testified that the surgery in December 2021 was ineffective, it was noted that she was "improved compared to before surgery" with intact strength and sensation to the lower extremities (Exhibit 9F/8, 13). Still further, the record consistently indicates that the claimant has a normal gait and no evidence of gait instability (Exhibits 2F/13; 3F/5; 6F/6 et seq.; 8F/2; 10F/2 et seq.; 13F/12; 14F/66; 15F/7 et seq.; 16F/253-254, 326). Still further, no doctors have explained why the claimant has continued to have these symptoms despite only mild findings on imaging and seemingly successful surgeries (Testimony *and see* record). While the claimant has reported significant side effects from her medication, she conversely denied any side effects (Exhibit 6F/123-124, 126-127, 132-133). Additionally, the claimant stated

18

that she can maintain her own personal appearance, drive several times per week, dine in restaurants, go to the movies, cook, perform housework, and perform multistep crafting projects transferring photographs she manipulates onto wood (Exhibit 4E, testimony).

CAR 26-27.

Plaintiff raises two arguments concerning the ALJ's evaluation of her subjective statements and testimony. First, Plaintiff argues that the ALJ erred by failing to link specific testimony found to be unpersuasive to any of the objective findings cited. See ECF No. 13-1, pgs. 14-16. Second, Plaintiff contends that the ALJ erred in relying on her activities of daily living. See id. at 16-17.

The Court finds both arguments unpersuasive because Plaintiff has not challenged a third independent reason cited by the ALJ for discounting Plaintiff's subjective statements and testimony – that Plaintiff's statements and testimony are internally inconsistent with each other, not just externally inconstant with other evidence. By way of example, Plaintiff has stated that pain medication has only reduced her pain level to a 6 out of 10 but has stated at other times that pain medication reduced her pain level to a 4 out of 10. Further, Plaintiff has sometimes reported significant side effects from medication while at other times denying any side effects. Even if the ALJ erred for the two reasons Plaintiff asserts, internal inconsistencies among Plaintiff's various statements – which Plaintiff does not address – support the ALJ's assessment. See Smolen, 80 F.3d at 1284.

Notwithstanding the foregoing finding, the Court will address Plaintiff's arguments.

1.    Link Between Objective Evidence and Statements and Testimony Found Unpersuasive

According to Plaintiff:

The ALJ cited the objective medical evidence, generally, as being inconsistent with Dawson's alleged limitations, but identified no particular findings which were inconsistent with any of the specific functional deficits Dawson described. . . . [¶] The ALJ failed to specify which testimony he found not credible and has not provided clear and convincing

/ / /

1    reasons supported by evidence in the record to support his rejection of
     Dawson's testimony. . . .

2

3    ECF No. 13-1, pg. 15.

4    The Court does not agree. The ALJ's hearing decision reflects that the ALJ linked

5    specific objective findings to specific portions of Plaintiff's subjective statements and testimony

6    found to be undermined by the objective evidence. For example, while Plaintiff alleged a sharp,

7    dull, burning pain in her right hip and groin, the ALJ cited contradictory objective evidence of

8    only mild findings as well as evidence that Plaintiff declined a nerve conduction or

9    electromyogram study. Further, as to Plaintiff's report of weakness in her right lower extremity,

10   the ALJ cited contradictory objective evidence of full bilateral lower extremity strength. As to

11   Plaintiff's complaint that surgery was ineffective, the ALJ cited objective evidence noting that

12   Plaintiff's condition had "improved compared to before surgery." The Court finds that these

13   specific findings satisfy the ALJ's obligation with respect to the ALJ's conclusion that Plaintiff's

14   subjective statements and testimony are inconsistent with the objective medical evidence of

15   record. See Lester, 81 F.3d at 834; see also Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir.

16   2015).

17                  2.      Reliance on Plaintiff's Activities of Daily Living

18   Regarding reliance on a claimant's daily activities to discount testimony of

19   disabling pain, the Social Security Act does not require that disability claimants be utterly

20   incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has

21   repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . .

22   does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v.

23   Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

24   Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

25   claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

26   restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

27   claimant was entitled to benefits based on constant leg and back pain despite the claimant's

28   ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

1    activities are not easily transferable to what may be the more grueling environment of the

2    workplace, where it might be impossible to periodically rest or take medication").    Daily

3    activities must be such that they show that the claimant is ". . .able to spend a substantial part of

4    his day engaged in pursuits involving the performance of physical functions that are transferable

5    to a work setting." Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

6    before relying on daily activities to discount a claimant's pain testimony.  See Burch v. Barnhart,

7    400 F.3d 676, 681 (9th Cir. 2005).

8            In discounting Plaintiff's subjective statements and testimony, the ALJ cited

9    Plaintiff's activities of daily living, as follows: "Additionally, the claimant stated that she can

10   maintain her own personal appearance, drive several times per week, dine in restaurants, go to the

11   movies, cook, perform housework, and perform multistep crafting projects transferring

12   photographs she manipulates onto wood (Exhibit 4E, testimony)."  CAR 27.  According to

13   Plaintiff:

14           The ALJ wrongly conflated Dawson's nominal activities of daily
             living, painting a skewed picture suggesting an individual who is the
15           proverbial "ball of fire" (CAR-23). They failed to convey a logical nexus
             between her modulated ADLs and the ability to work eight hours a day,
16           five days a week, or the equivalent. See Social Security Ruling 96-3p
             (SSR 96-3p).
17
                                   * * *
18
             Here, Dawson explained that before her most recent surgery she
19           was able to do a few household tasks, such as laundry, but since the most
             recent surgery her pain has gotten much worse, and she can no longer do
20           any chores except for occasionally dusting. (Tr. 45.) Dawson explained
             that when she goes to a movie, she gets a reclining seat and must take
21           breaks to stand and walk around. If she goes out to dinner, she cannot sit
             comfortably in a chair for more than about 30 minutes, just as in the rest of
22           her daily life. (Tr. 46.) Davidson's ability to manage her personal
             appearance and work on crafts at home with ample breaks to rest is not in
23           any way inconsistent with the limitations she described in her testimony.

24           ECF No. 13-1, pgs. 16-17.

25           This argument is more persuasive in that the Court agrees that the evidence shows

26   that Plaintiff's activities of daily living are more limited than suggested by the ALJ and are not

27   such as would translate to full-time competitive work.  Nonetheless, any error is harmless

28   because, as discussed above, the ALJ's decision to discount Plaintiff's statements and testimony

                                        21

1  is supported by internal inconsistencies among Plaintiff's own statements as well as inconsistency

2  with the objective medical findings.

3

4  **IV.  CONCLUSION**

5  Based on the foregoing, the undersigned recommends that:

6  1.  Plaintiff's motion for summary judgment, ECF No. 13, be denied.

7  2.  Defendant's cross-motion for summary judgment, ECF Nos. 15 and 16, be

8  granted.

9  3.  The Commissioner's final decision be affirmed.

10  These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

12  after being served with these findings and recommendations, any party may file written

13  objections with the court.  Responses to objections shall be filed within 14 days after service of

14  objections.  Failure to file objections within the specified time may waive the right to appeal.  See

15  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16

17  Dated:  August 22, 2025

18  _____
   DENNIS M. COTA
19  UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28

22